IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| MICHAEL GEIST, § | |
|     Plaintiff, § | **JURY DEMANDED** |
| § | |
| v. § | CIVIL ACTION NO. 1:20-CV-02476 |
| § | |
| TOPS WELL SERVICES, LLC, § | |
|     Defendant. § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Plaintiff, MICHAEL GEIST, and files this Original Complaint complaining of Defendant TOPS WELL SERVICES, LLC and for cause of action would show the Court the following:

### I.

### INTRODUCTION

1.1  This action seeks damages, attorneys' fees, taxable costs of the court, pre-judgment and post-judgment interest as a result of civilly wrongful conduct in violation of the laws of the United States.

1.2  Plaintiff, by counsel, brings this action for damages and other legal and equitable relief for Defendant's violations of the Americans with Disabilities in terminating Plaintiff.

### II.

### THE PARTIES

2.1  Plaintiff is an individual who can be contacted through counsel.

2.2  Defendant TOPS WELL SERVICES, LLC is an entity that can be served through its registered agent, Jon Konrad, 454 35 Road, Palisade, CO 81526.

## III.

### JURISDICTION, VENUE AND CONDITION PRECEDENT

3.1     The amount in controversy exceeds the jurisdictional minimum amount in controversy for this Court. The Plaintiff was employed with Defendant. Jurisdiction is invoked pursuant to 42 U.S.C. §12112. This Court has jurisdiction over this matter as it involves a federal question based upon the Americans With Disabilities Act ("ADA").

3.2     This action lies in the United States District Court for the District of Colorado pursuant to 42 U.S.C. §2000e-5(f)(3) because it is the district where the unlawful employment practice occurred.

3.3     All conditions precedent have been performed or have occurred.

## IV.

### FACTS

4.1     Plaintiff is a disabled veteran. He was a military police officer on active duty from October 2004 through May 2006, and was deployed to Iraq from December 2004 through May 2006. Then, Plaintiff was subsequently reactivated and deployed to Iraq again from February 2008 through April 2009. Upon returning to the U.S. after his second deployment, Plaintiff was diagnosed with PTSD. The VA determined that his PTSD diagnosis is service related and assigned Plaintiff a 30% disability rating. Since Plaintiff began receiving treatment from the VA for PTSD, his symptoms have been well-controlled.

4.2     Plaintiff worked for TOPS Well Services, LLC, a fracking company headquartered in Sealy, Austin, County, Texas as a Field Engineer at its Grand Junction, Colorado location.

4.3     On March 30 or 31, 2019 Plaintiff was working on a job for a TOPS client in Utah. This was an active frack with live explosives present on location for use by "wireline" when they go downhole (into the well). Wireline is how explosives are lowered to the necessary depth in the well, detonated, and then the explosive remnants are brought back up after the "shots" are fired. If any of the "shots" do not fire, this is called a "mis-run" and it results in live and "should-have-exploded" charges being hoisted up out of the well and dangling. Plaintiff was sitting in the control van with his co-workers while the explosives were lowered into a well. In this instance there was a mis-run in which none of the explosives detonated. All the workers were on edge because it was a significant amount of explosives. In this case, none of the shots fired, not just some.

4.4     Given that none of the shots detonated, the location should have been evacuated, which is the protocol in such a situation. Plaintiff did, in fact, ask to evacuate the location, but the request was scoffed at and Plaintiff was called a pussy. Shortly thereafter is when someone made a loud and abrupt noise, which sounded like an explosion to Plaintiff, directed at Plaintiff from behind Plaintiff to frighten Plaintiff. Plaintiff yelled and was visibly startled. People mocked and laughed at Plaintiff. Plaintiff was terrified and the incident immediately triggered all of his PTSD symptoms. Plaintiff suddenly began losing control of his emotions. Plaintiff became very frustrated and started tearing up. A co-worker by the name of Steve Gannon witnessed all of this, both the loud noise and the obvious impact it had on Plaintiff.

4.5     The wireline issue was unable to be resolved, so shortly after this "prank" was played Plaintiff was released from the location because they were shutting down for the day. His symptoms became more prevalent as the night continued and only worsened. Plaintiff arrived for his next shift (which began as soon as wireline was good to go and they made the calls to get people out there and ready)

on April 1, 2019, at which point his PTSD symptoms were such that Plaintiff could no longer hide them. At that point Plaintiff had a meltdown and Plaintiff had to step away from his peers to collect himself.

4.6     Later that same day Nathan Carter, a superior in the engineering department, called and told Plaintiff to pack up and head back to the office in Grand Junction.  Plaintiff agreed to do so, but Plaintiff thought it was a strange request because he was originally supposed to stay in Utah for several more days to work on other jobs.

4.7     On April 3, 2019, Plaintiff returned to the office in Grand Junction and met with Ron Hudson, TOPS' U.S. Engineering Manager, and Brandon Tofsrud.  Ron informed Plaintiff that Plaintiff was being terminated effective immediately due to his "outburst" on April 1, 2019.  In response, Plaintiff insisted that the "outburst" did not affect his performance on the job or the outcome of the job, and Ron did not dispute that.  During this conversation Plaintiff brought up his disability and pointed out that TOPS was aware of it because arrangements had been made in Wyoming for Plaintiff to have his service dog with him.  Plaintiff told Ron that if he felt Plaintiff could not do field work he would understand, but to find Plaintiff a commensurate position elsewhere in the company.  This seemed to make Ron begin to hesitate and reconsider.  At that point Juan Pino, TOPS' U.S. Operations Manager, came into the room and shouted at Plaintiff that Plaintiff was fired told Plaintiff to get the fuck out, which Plaintiff did.

4.8     On April 7, 2019, Plaintiff followed-up with his VA psychologist and explained what had occurred during the prior week at work.  The psychologist confirmed/documented that this incident at the job site had triggered a recurrence of his PTSD symptoms.

## V.

## CAUSES OF ACTION

5.1     The allegations contained in Paragraphs 4.1 through 4.8 inclusive are hereby incorporated by reference for all causes of action.

### Disability Discrimination

5.2     As the facts set forth above show, Plaintiff is disabled, as defined by the Americans with Disabilities Act (ADA), as amended.  Plaintiff suffers from PTSD that substantially limits one or more of his major life activities.  He is otherwise qualified to perform the essential functions of the job Defendant hired Plaintiff for. At all times relevant hereto, Plaintiff was an employee within the meaning of the ADA. Defendant violated the ADA by intentionally discriminating against plaintiff and harassing Plaintiff because of his disability and/or being regarded as disabled.  Defendant's discriminatory acts include harassing Plaintiff and terminating Plaintiff. Plaintiff's disability and/or being regarded as disabled was a determining or motivating factor in Defendant's decision to discipline Plaintiff and to ultimately terminate Plaintiff's employment. Plaintiff's disability moved Defendant toward its decision or was a factor that played a part in Defendant's employment decisions as to Plaintiff.

5.3     In addition as the facts set forth above show, Defendant failed to provide Plaintiff with a reasonable accommodation and furthermore failed to engage in the required interactive process. As such, Defendant has violated the ADA by failing to provide Plaintiff with a reasonable accommodation and by failing to engage in the required interactive process.

5.4     In addition as the facts set forth above show, Defendants harassed Plaintiff because of his disability.

## VI.

## DAMAGES

6.1     As a result of Defendant's unlawful conduct, Plaintiff has suffered economic and actual damages, including past and future lost income, back wages or back pay, interest on back pay and front pay, future wages or front pay, employment benefits in the past and future, lost earnings in the past and future, and all lost benefits under the contract or employment relationship.

## VII.

## COMPENSATORY DAMAGES

7.1     Defendant has intentionally engaged in unlawful employment practices. Plaintiff additionally brings suit for compensatory damages, including emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, injury to professional standing, injury to character and reputation, injury to credit standing, job search expenses, lost earning capacity in the past and future, and other pecuniary and non-pecuniary losses.

## VIII.

## ATTORNEYS' FEES AND EXPERT FEES

8.1     A prevailing party may recover reasonable attorneys' fees, expert fees, and costs pursuant to the Americans with Disabilities Act. Plaintiff brings suit for these fees from Defendant. Plaintiff seeks all reasonable expert fees and attorneys' fees in this case, including preparation and trial of this lawsuit, post-trial, pre-appeal work, any appeal to the Fifth Circuit Court of Appeals, or an appeal to the United States Supreme Court, and post-judgment discovery and collection in the event execution on the judgment is necessary.

## IX.

## PUNITIVE DAMAGES

9.1 Defendant has acted with malice or reckless indifference to Plaintiff's rights. Defendant, by engaging in the aforementioned acts and/or in authorizing and/or ratifying the aforementioned acts, engaged in willful, malicious, intentional, and oppressive conduct and acted with willful and conscious disregard, or alternatively reckless disregard or indifference of the rights, welfare, and safety of Plaintiff, therefore justifying the award of punitive and exemplary damages in an amount to be determined at trial.  Therefore, Plaintiff additionally brings suit for punitive damages and exemplary damages.

## X.

## JURY DEMAND

10.1 Plaintiff demands a trial by jury on all issues.

### PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendant be cited to appear and answer herein, and, upon final trial, Plaintiff have Judgment against Defendant as requested above, and as follows:

1. Judgment against Defendant for all damages alleged in this petition;
2. Interest before and after judgment at the highest rate provided by law, until paid;
3. Costs of suit;
4. Reasonable and necessary attorneys' fees and expert witness fees;
5. Such other and further relief to which Plaintiff may be justly entitled.

Respectfully submitted,

THE MELTON LAW FIRM, P.L.L.C.
925 S. Capital of Texas Hwy, Suite B225
Austin, Texas 78746
(512) 330-0017 Telephone
(512) 330-0067 Facsimile
email: jmelton@jfmeltonlaw.com

_____
John F. Melton
State Bar No. 24013155

ATTORNEYS FOR PLAINTIFF:
Michael Geist
P.O. Box 424
De Beque, CO 81630